Kopacka, Plaintiff in error, v. State, Defendant in error.

*January 10—February 4, 1964.*

458

For the plaintiff in error there was a brief by *Beaudry & Kershek,* and oral argument by *Richard D. Kaestner* and *Robert J. Beaudry,* all of Milwaukee.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief were *George Thompson,* attorney general, *William A. Platz,* assistant attorney general, and *Joseph B. Molinaro,* district attorney of Kenosha county.

DIETERICH, J. The writ of error raises several issues. The first issue is whether the trial court erred in not grant-

ing plaintiff in error's motion to dismiss on the ground that he was denied a speedy trial.

Sec. 7, art. I of the Wisconsin constitution, provides in part as follows:

"In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; . . ."

On September 13, 1961, a criminal complaint was made charging Emil Kopacka with burglary of the Nazzareno Virgili home in Kenosha on September 8, 1961. Kopacka was arrested on September 13, 1961, pursuant to a criminal warrant issuing from the Kenosha county municipal court, and was taken into custody by the Kenosha police department. He appeared in court and, through his attorney, waived preliminary examination. The court determined that it was probable that an offense had been committed and that there was probable cause to believe Kopacka guilty of such offense, and set bail in the sum of $4,000 for Kopacka's appearance before the court "at the now pending term, to wit: the March, A. D. 1961 term, or the next regular term thereof . . ."

On November 10, 1961, Kopacka was still in custody, being unable to raise bail, and appeared in court with his attorney pleading not guilty to the charge, requesting a jury trial, and asking that the matter be heard as soon as possible. The court stated that the clerk would be so informed. The case of State v. Emil Kopacka was called on April 2, 1962. Kopacka, having received no notice, did not appear in person or by his attorney, and the district attorney informed the court that on November 10, 1961, Kopacka had pleaded not guilty and requested a jury trial. On April 17, 1962,

the case was again called and Kopacka and his attorney were present. After the jury was selected Kopacka moved to dismiss on grounds that he was denied a speedy trial. This motion was denied, and the trial court took judicial notice of the fact that after the case had been placed on the November calendar the judge became ill and went to the hospital on or about November 15th, and remained ill for the rest of the year, except that he came back to court "functioning under disability." The trial court stated in denying the motion to dismiss for lack of a speedy trial that:

"The record does not disclose any exertion of affirmative action on the part of the defendant's attorney who knew he was incarcerated, and if he desired he could have insisted on an immediate trial and action taken to have the matter heard. The record is devoid of that and the motion is denied."

This court has held that a defendant must take some affirmative action demanding that his case be brought on for trial as a condition precedent to requesting dismissal of the charge on the ground that he has been denied his constitutional right to a speedy trial. *State v. Sawyer* (1953), 263 Wis. 218, 224, 56 N. W. (2d) 811; *State v. Sawyer* (1954), 266 Wis. 494, 497, 63 N. W. (2d) 749. See also 57 A. L. R. (2d) 302, 326.

Kopacka contends that he fulfilled this condition precedent by action taken on November 10, 1961, when he informed the court that he desired the matter to be heard as early as possible. Each case involving the issue of denial of a speedy trial turns on its own facts, although the general rule is stated to be that the right to a speedy trial is a right to be tried as soon as is reasonably possible. A motion to dismiss for lack of speedy trial will be denied where the accused is tried as soon as the orderly conduct of the business of the court permits. 22A C. J. S., Criminal Law, p. 25, sec. 467.

Although Kopacka was not tried until some seven months after he was first jailed, and although he did make an effort

approximately two months after his arrest to secure a trial as soon as possible, it cannot be said that his constitutional rights to a speedy trial were denied. He was originally scheduled for trial during the November, 1961, term of court. On or about November 15, 1961, the judge became ill and remained so for the remainder of the year, although it appears that he returned to the court "functioning under disability" for a part of that time. Kopacka was tried on April 17, 1962. Mere lapse of time does not, by itself, constitute denial of the right to speedy trial, for there can be no such denial where, as here, a defendant is tried as soon as the orderly operation of the court permits.

Kopacka cites sec. 955.10, Stats., in support of his contention that he was denied a speedy trial. That section provides as follows:

"PRISONER, WHEN TRIED. Every defendant in prison shall, if he requests it, be tried not later than the next term of court after his imprisonment began or he shall be bailed without sureties, unless it appears to the court that witnesses on behalf of the state have been enticed or kept away or are prevented from attending the court by sickness or accident."

Kopacka did not request the trial court that he be bailed without sureties—nor is this his objective on appeal. His contention is that he is entitled to a dismissal of the charge for lack of a speedy trial. If his trial did not take place until after the next term of court following his imprisonment, he could have requested, and undoubtedly obtained, bail without sureties pursuant to sec. 955.10, Stats. However, this was not done, although he was represented by counsel at all times during his incarceration. Sec. 955.10 cannot form the basis for dismissal on grounds of denial of the constitutional right to a speedy trial, since this section merely entitled a prisoner to be bailed without sureties if he so requests, and if he is not tried within a specified time.

We determine that the trial court properly denied Kopacka's motion to dismiss for lack of a speedy trial.

The second issue is whether the trial court erred in not granting plaintiff in error's motion to dismiss the jury panel on grounds that the panel did not reflect a true cross section of the citizens of the community.

The facts bearing on this issue are as follows: Kopacka challenged the entire jury panel and asked that a mistrial be declared on the ground that the panel did not reflect a cross section of the people and citizenry of the community. In support of the motion, Kopacka's counsel stated to the court that the population of the city of Kenosha is somewhere close to 70,000; that he was of the understanding that the Negro population of the community is in excess of 1,000 inhabitants; and that there were no Negroes on the jury panel. The trial court noted the objection and denied the motion. The transcript reveals nothing further on this point.

Kopacka cites several United States supreme court cases holding that where a jury-selection plan operates in such a way as always to result in the complete and long-continued exclusion of any representative at all from a large group of Negroes, or any other racial group, the verdicts returned by juries thus selected cannot stand. See *Patton v. Mississippi* (1947), 332 U. S. 463, 469, 68 Sup. Ct. 184, 92 L. Ed. 76; *Hernandez v. Texas* (1954), 347 U. S. 475, 74 Sup. Ct. 667, 98 L. Ed. 866; and *Eubanks v. Louisiana* (1958), 356 U. S. 584, 78 Sup. Ct. 970, 2 L. Ed. (2d) 991. However, the arguments advanced by Kopacka do not even meet the test set forth by the cases cited in his own brief, for the record in the instant action is completely barren of any evidence tending to show that Negroes were excluded from the jury panel. Kopacka argues that the fact, that neither the trial court nor the district attorney said anything when the population ratio of Negroes to whites in the community was pointed out to them, raises a presumption of systematic exclusion.

It requires no discussion whatsoever to illustrate that the arguments advanced by Kopacka on this point are wholly without merit. The trial court properly denied the motion to dismiss the jury panel.

The third issue is whether the trial court erred in admitting into evidence testimony concerning plaintiff in error's alleged visit to the burglarized premises ten days prior to the time the crime was committed.

The complaining witness, Mr. Virgili, testified that on the evening of August 29, 1961, ten days prior to the alleged burglary, Kopacka appeared at the front door of the Virgili home, and asked to use the telephone. Mr. Virgili stated that Kopacka used their bathroom, made a telephone call, and left. Mr. Virgili saw Kopacka return to his car, which was parked in front of the house, and lift the hood. About three minutes after the phone call another car appeared and pushed Kopacka's car away. Mr. Virgili's testimony dealing with Kopacka's visit to his home on August 29, 1961, was admitted by the trial court over objections by counsel for the defense.

The plaintiff in error claims that there was no connection between Kopacka's presence in the Virgili home on August 29, 1961, and the offense charged, and that such evidence does not tend to establish any ingredient of the offense— such as knowledge, intent, or identity. The state contends that the evidence of the August 29th visit tended to show Kopacka's familiarity with the burglarized premises at the time of the burglary.

The general rule as to the admissibility of circumstantial evidence in criminal cases is stated as follows in 20 Am. Jur., Evidence, p. 261, sec. 273:

"The modern doctrine is extremely liberal in the admission of any circumstances which may throw light upon the matter being investigated, great latitude must be given the

state in the production of its evidence in proof of criminal charges. . . . in no case is evidence to be excluded of facts or circumstances connected with the principal transaction from which an inference can be reasonably drawn as to the truth of a disputed fact. All facts tending to elucidate the matter under discussion which are referable to the point in issue tend to exhibit the res gestae or to establish a chain of circumstantial evidence in respect of the act charged. It is necessary only that they tend to prove the issue or constitute a link in the chain of evidence. Evidence of circumstances which tend to connect the accused with the commission of a crime is properly admitted, even though inconclusive in character. Such evidence is competent to establish many varying facts."

This court has stated that circumstantial evidence may be and often is stronger and more satisfactory than direct evidence. See *State v. Johnson* (1960), 11 Wis. (2d) 130, 135, 104 N. W. (2d) 379. The dissenting opinion in the *Johnson Case* also recognized that most cases involving the crime of burglary rest to a very great extent, if not solely, on circumstantial evidence due to the secretive nature of the crime.

The issue becomes simply whether it is proper for the state to show a burglary defendant's familiarity with the burglarized premises by proving his presence there before the crime was committed. The state cites several cases from other jurisdictions which uphold this proposition.

The sudden appearance of the plaintiff in error at the Virgili home ten days prior to the crime may not, by itself, tend to prove his guilt, but when coupled with other testimony taken at the trial it becomes a link in the chain of circumstantial evidence tending to show that Kopacka was familiar with the premises on September 8, 1961, the night of the burglary—the same night his car (the car he stated was never loaned to anyone else) was seen cruising the neighborhood, and eventually parked within two blocks of the Virgili home.

We determine that the testimony as to Kopacka's visit to the Virgili home on August 29, 1961, was material and relevant as tending to show his familiarity with the burglarized premises; and, as such, was properly admitted by the trial court.

The fourth issue before this court is whether the trial court erred in admitting the testimony of police officers concerning alleged statements, admissions, and declarations made by the plaintiff in error.

Police Detective Toigo testified that Mr. Virgili stated to Kopacka at the Milwaukee police department: "You are the man who used my phone at my home on August 29th," and that Kopacka denied this, claiming he had never seen Virgili before. Virgili testified at one point that he had not talked to Kopacka at the police department. Other detectives testified that Mrs. Virgili identified a picture of Kopacka as the man who came to the Virgili home and used the telephone on August 29, 1961. Detective Bosman also testified that Mrs. Virgili told him the details of Kopacka's visit on August 29th. This line of testimony was objected to by counsel for the defense as being hearsay, and the trial court overruled the objections.

The plaintiff in error contends that the testimony of the police officers on these points constituted hearsay, and was prejudicial to his case. It is the state's position that even if the admission of the officers' testimony was improper, the error was harmless for the reason that Mr. and Mrs. Virgili had already testified directly that Kopacka had used their telephone on August 29th, and also that they had identified both the defendant's picture and the defendant himself at the police lineup.

Sec. 274.37, Stats., provides in part that:

"No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of . . . improper admission of evidence, . . . un-

less in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

Since the matters testified to by the police officers were already a part of the record by reason of the direct testimony of the Virgilis, the officers' testimony was merely cumulative and could not have prejudiced the defendant. See *McDonald v. State* (1927), 193 Wis. 204, 209, 212 N. W. 635.

Since no prejudice could arise from the admission of the officers' testimony, we need not reach the question of whether the trial court erred in admitting such testimony.

The final issue is whether the trial court erred in not granting plaintiff in error's motion to dismiss on grounds that the evidence was insufficient as a matter of law to sustain the jury's verdict of guilty.

In support of his argument that the evidence was insufficient to sustain a verdict of guilty, Kopacka points out that no one actually saw him burglarize the Virgili home, and that when he was arrested both his person and his car were searched by police officers and none of the property stolen from the Virgili home was found.

The rules bearing on the sufficiency of circumstantial evidence in a criminal conviction were discussed by this court in *State v. Johnson, supra.* In that case it was said that (p. 134):

"Circumstantial evidence may be and often is stronger and as convincing as direct evidence. The same rule of the burden of proof in a criminal case applies to circumstantial evidence as to positive, direct evidence; and in both cases the evidence must be sufficiently strong and convincing to establish the facts of guilt beyond a reasonable doubt in the mind of the trier of the facts. Circumstantial evidence has its inherent defects but human testimony, too, has its infirmities. A notion exists that all circumstantial evidence should be viewed

with distrust because it can establish, at most, only a possibility of guilt. Such an opinion, based on the theory that circumstantial evidence can only be the basis for conjecture and is impotent to correctly indicate or to satisfactorily establish the facts upon which guilt must rest to the required degree of certainty, is unwarranted. It is true that circumstantial evidence in many cases may be so weak as not to meet the standard of proof. But circumstantial evidence may be and often is stronger and more satisfactory than direct evidence; . . ."

This court does not retry the case on the facts in the record to determine if each of its members is convinced of a defendant's guilt beyond a reasonable doubt. Its duty is to determine whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt. *State v. Hanks* (1948), 252 Wis. 414, 31 N. W. (2d) 596; *State v. Johnson, supra,* page 137.

From the testimony of Bruce Hannah, a neighbor of the Virgilis, it appears that on September 8, 1961 (the night of the burglary), at approximately 8:45 p. m., an automobile stopped in front of the Hannah home, after having gone by the house three times. Hannah's home is located on Eighteenth avenue about one and one-half blocks from the Virgili residence, which is situated on the northeast corner of Eighteenth avenue and Thirty-Eighth street in Kenosha. Hannah testified that two men, apparently white, and wearing white shirts, got out of the car, walked down Eighteenth avenue and turned onto Thirty-Eighth street, heading in the direction of the Virgili home. Another neighbor testified that she saw two men wearing white shirts come out of the rear door of the Virgili home at approximately 9:30 p. m. According to this witness the two men "went down" Eighteenth avenue. Mrs. Bruce Hannah testified that at approximately 9:45 p. m., two men wearing white shirts walked up to the car which had been parked in front of the

Hannah home, got in, and drove off in a southerly direction. According to Mrs. Hannah, the headlights were not turned on until the car had reached an arterial stop sign about one block away.

Kopacka's car bore license number P. 15–740, and was a 1953 beige and green Chevrolet. The car parked in front of the Hannah home on the evening of September 8, 1961, was described as a 1953 white and green Chevrolet bearing license number P. 15–740. Kopacka had stated to a policeman that he was not financially well-off and that he never loaned his car to anyone. Kopacka was identified by the Virgilis as the man who entered their home ten days prior to the burglary to use the telephone and bathroom, although Kopacka told the officers that he had not been in Kenosha for ten years.

The testimony summarized above represented the major evidence taken at the trial. The jury was instructed as follows on the value of circumstantial evidence:

"The state relies upon circumstantial evidence. Circumstantial evidence is the proof of certain facts from which a jury may logically infer the existence of other facts according to the knowledge or common experience of mankind.

"It is not unusual in a criminal case to rely upon circumstantial evidence.

"It is true that circumstantial evidence may be so weak as not to meet the standard of proof beyond a reasonable doubt. However, circumstantial evidence may be, and often is, stronger and more convincing than direct evidence.

"To warrant a conviction on circumstantial evidence, facts necessary for the conclusion sought to be established must be proven by competent evidence beyond a reasonable doubt as that phrase is defined for you in these instructions. These facts must be consistent with each other and with the guilt of the defendant. The circumstances must lead you to conclude beyond a reasonable doubt that the accused committed the offense.

"It is not sufficient that the facts simply render probable the guilt of the accused. No other conclusion but that of the guilt of the accused must fairly and reasonably grow out of the evidence."

We determine that the evidence, although entirely circumstantial, was sufficient to convince a jury of the defendant's guilt beyond a reasonable doubt.

*By the Court.*—Judgment affirmed.