STATE, Respondent, v. KWITEK and another, Appellants.*

*No. State 76. Argued November 30, 1971.—Decided
February 1, 1972.*
(Also reported in 193 N. W. 2d 682.)

* Motion for rehearing denied, without costs, on April 10, 1972.

For the appellants there was a brief by *David J. Hase* of Milwaukee, for John P. Kwitek, and by *Robert H. Friebert* of Milwaukee, for Donald Crisp, attorneys, and *Cook & Franke, S. C.,* and *Samson, Friebert, Sutton & Finerty,* all of Milwaukee, of counsel, and oral argument by *Mr. Hase* and *Mr. Robert H. Friebert.*

For the respondent the cause was argued by *George L. Frederick,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney of Milwaukee county.

BEILFUSS, J.   The single issue is whether the defendants were denied a speedy trial.

Both the Wisconsin and the United States Constitutions provide for a speedy trial.

Art. I, sec. 7 of the Wisconsin Constitution reads:

"In all criminal prosecutions [by indictment or information] the accused shall enjoy the right . . . to a speedy public trial . . . ."

The sixth amendment to the United States Constitution reads:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, . . ."

The armed-masked robbery in question was committed on April 24, 1967, and defendants were convicted on July 23, 1969.

The procedural facts material to a determination of the speedy trial issue, presented chronologically and in quite some detail, are as follows:

On April 24, 1967, the crime in question was committed. On June 19, 1967, a complaint and warrant were issued for this offense.

In September of 1967, the defendants were arrested on a federal charge of bank robbery and have been in federal custody since that time, except for two days when defendants were at large after an escape.

In October, 1967, the first indictment against defendants for a federal offense was dismissed because of a misnomer of one of the defendants; however, they were held in custody and rearrested shortly thereafter.

An attorney, Richard B. Surges, was appointed to represent the defendants as indigents in federal court. On November 17, 1967, Surges, by letter to the Milwaukee county district attorney, notified the district attorney that the defendants were federal prisoners and were being held at the Waukesha county jail. He further, on behalf of the defendants, demanded a speedy trial. On December 5, 1967, the defendants were arrested and appeared in a state court in Milwaukee county. They were found indigent and the same attorney, Surges, was appointed to represent them. On December 12, 1967, they appeared in county court of Milwaukee county and upon the motion of the defendants' attorney, Surges, the preliminary hearing was adjourned to January 4, 1968.

On the same day, December 12, 1967, the defendants escaped from the Ozaukee county jail and were at large for two days. During the escape one of the guards was quite brutally beaten up. After apprehension the defendants were placed in the Kenosha county jail because

it was the most secure jail available to federal authorities.

The defendants did not appear for the January 4, 1968, preliminary hearing date and the matter was continued until January 10, 1968; nor did they appear on the January 10th date, but their attorney, Surges, did. The federal marshal, who had custody of the defendants was requested to produce the defendants in the state court for both the January 4th and January 10th proceedings. He refused to honor the request upon the advice of an assistant United States attorney that because of the escape attempts the defendants were poor security risks. Mr. Surges, knowing the defendants would not appear in the state court, persisted in moving for a dismissal of the complaints because of a delay beyond the statutory period for a preliminary hearing without a waiver by the defendants. The motion to dismiss was granted without prejudice.

On January 17, 1968, a new complaint and warrant were issued but not served by Milwaukee county authorities.

On January 23, 1968, after pleas of guilty, both defendants were sentenced in federal court for bank robbery and escape. The defendants were immediately sent to federal prison at Leavenworth, Kansas, and their official custody transferred from the United States Marshal for the Eastern District of Wisconsin to the Attorney General of the United States and the Bureau of Prisons.

On January 24, 1968, a detainer was filed against defendants with the warden of Leavenworth. Both defendants were advised of the detainer about March 6, 1968. Both defendants testified that as soon as they were advised of the detainer they wrote to the chief of police of Milwaukee demanding a speedy trial. Other than the defendants' statements, there is no proof of such a letter or demand.

In May of 1968, Kwitek was transferred to the federal penitentiary at Marion, Illinois. Crisp remained in Leavenworth, Kansas.

On July 22, 1968, Crisp prepared and sent a motion for a speedy trial to the clerk of court of Milwaukee county demanding a speedy trial.

On August 2, 1968, Ben J. Wiener, a deputy district attorney for Milwaukee, responded as follows:

"I am checking into the matter of the cases pending here against you and will advise you within the next several days as to what procedure we will take.

"In the meantime will you kindly advise what your pleas will be so that we may more conveniently arrange with the court for setting your matters on the calendar."

Crisp responded to Wiener's letter, again demanding a speedy trial. The letter did not mention Kwitek. Wiener replied to this letter on October 28, 1968. He stated:

"This will acknowledge your last letter with reference to returning you to Milwaukee to stand trial on the several charges that are pending against you.

"I am preparing the necessary papers to effectuate your return but in the meantime I wish you would advise me more definitely, if you so wish, as to what your plea will be to the matters pending here. In one letter you stated to me that your plea would be satisfactory to the court. I am not demanding that you advise what your plea will be but if you desire to so inform me then such information will aid in setting your matters for hearing."

On December 6, 1968, Wiener prepared an affidavit and a writ for habeas corpus *ad prosequendum* to produce Kwitek from Marion, Illinois, and Crisp from Leavenworth, Kansas. These documents were not served nor filed. Three days later, December 9, 1968, Wiener prepared a memorandum for David J. Cannon, the district attorney for Milwaukee county, which contained the following:

"That memo says. 'I heretofore advised you I prepared the necessary petition and writ for the return of

each of the above named individuals and then learned that their convictions were vacated in the Federal Court because of some error in the indictment and that they, therefore, were released from the institutions from which we were seeking to have them returned to Milwaukee for trial.

" 'It appears to me that there isn't anything we can do until the federal authorities get through with proceedings in the Federal Court.' "

In December of 1968, the federal bank robbery conviction was set aside because of a defect in the charge, *i.e.,* it was not alleged the bank was a federally insured bank. On January 29, 1969, both defendants were returned to the custody of the federal marshal for the Eastern District of Wisconsin and held at various times in the county jails of three counties—Kenosha, Waukesha and Ozaukee (Port Washington). The marshal at this time concluded they were no longer unusual security risks.

On January 31, 1969, a letter was written by both defendants requesting that the Wisconsin charges be dismissed because of lack of a speedy trial.

On March 3, 1969, Kwitek prepared and sent a motion to Judge COFFEY, circuit judge of Milwaukee county, and to Ben Wiener requesting a speedy trial.

On April 2, 1969, both defendants were arrested and made initial appearances in the county court. Preliminary examinations were held on April 8th and both defendants were bound over to the circuit court for trial. On April 17, 1969, defendants were arraigned in circuit court and a jury trial was set for July 9, 1969.

In the interval between April and June, both Crisp and Kwitek were retried separately in jury trials in federal court. Kwitek had two jury trials during this period because the first one resulted in a mistrial. They were both found guilty and resentenced by the federal court.

It is also significant that during the interval between the original federal sentence and their retrials the defendants were pursuing postconviction remedies in fed-

eral court challenging their federal convictions. These proceedings included petitions treated as motions to reconsider and reduce their sentences which were considered and denied, and their successful challenge which resulted in the new trials.

On July 9 and 16, 1969, in response to motions, the circuit court for Milwaukee county, by Judge COFFEY, heard and denied motions to dismiss the charges because of lack of a speedy trial.

The defendants then waived a jury trial. The cases were heard by the court on July 23, 1969, and the defendants were found guilty. Sentence was imposed on August 8, 1969, after a presentence investigation.

A postconviction motion to set aside the conviction on the ground of lack of a speedy trial was heard and denied on May 1, 1970. This appeal was taken June 23, 1970.

There can be no doubt that an accused is entitled to a speedy trial by virtue of the provisions of the Wisconsin Constitution (art. I, sec. 7, *supra*), and the sixth amendment of the United States Constitution as made applicable to the states by the fourteenth amendment.[1]

The rule in Wisconsin is that the defendant must demand "that his case be brought on for trial as a condition precedent to requesting dismissal of the charge on the ground that he has been denied his constitutional right to a speedy trial." *Kopacka v. State* (1964), 22 Wis. 2d 457, 460, 126 N. W. 2d 78. *See also, Commodore v. State* (1967), 33 Wis. 2d 373, 147 N. W. 2d 283; *State v. Stoeckle* (1969), 41 Wis. 2d 378, 164 N. W. 2d 303.

Although urged to do so, we are not persuaded that we should abandon the demand rule. This is especially true because of the new statutory provision for interstate cases in sec. 976.05, Stats. 1969 (not effective in this case), which provides in substance that the defendant must notify the prosecuting attorney and the court of his

---

[1] *See Klopfer v. North Carolina* (1967), 386 U. S. 213, 87 Sup. Ct. 988, 18 L. Ed. 2d 1.

place of imprisonment and demand a final disposition of the charges against him.

We do not believe the self-serving statement of the defendants that they sent a letter to the chief of police of Milwaukee in May of 1967 while they were in Leavenworth, without any additional proof as to mailing or receipt of the letter, compels a finding upon review that a demand was made at that time. It is clear, however, that Crisp did make a demand for a speedy trial on July 22, 1968, by his motion sent to the clerk of court. The trial court found that any demand made by Crisp also applied to Kwitek. This finding will not be disturbed and we conclude a sufficient demand was made on July 22, 1968.

It also appears without dispute that the defendants were arrested and brought before the state court on April 2, 1969. The defendants do not seriously contend there was any undue delay between the initial appearance on April 2, 1969, and the trial on July 23, 1969. We calculate the delay then to be from July 22, 1968, to April 2, 1969—a period of about eight and one-half months.

We are urged to adopt the "180-day rule" as it now appears in the interstate extradition sections of the statute.[2] This section was not effective on the date of the trial of this matter and we do not believe it should be applied even though the "180-day rule" was effective for intrastate detainers on that date. While the legislature may, with propriety, adopt a numerical standard in calculating as a matter of public policy that charges should be dismissed after demand for trial and delay, we do not believe a court can fix such an arbitrary standard and base it upon judicial reasons.

In *United States v. Ewell* (1966), 383 U. S. 116, 120, 86 Sup. Ct. 773, 15 L. Ed. 2d 627, the United States Supreme Court stated:

---

[2] Sec. 976.05 (1), Stats. 1969.

"We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial. This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' *Beavers v. Haubert,* 198 U. S. 77, 87. 'Whether delay in completing a prosecution . . . amounts to an unconstitutional deprivation of rights depends upon the circumstances. . . . The delay must not be purposeful or oppressive,' *Pollard v. United States,* 352 U. S. 354, 361. '[T]he essential ingredient is orderly expedition and not mere speed.' *Smith v. United States,* 360 U. S. 1, 10."

In *Kopacka v. State, supra,* at page 460, we stated:

". . . Each case involving the issue of denial of a speedy trial turns on its own facts, although the general rule is stated to be that the right to a speedy trial is a right to be tried as soon as is reasonably possible. A motion to dismiss for lack of speedy trial will be denied where the accused is tried as soon as the orderly conduct of the business of the court permits. . . ."

The defendants cite a recent United States Supreme Court case, *Dickey v. Florida* (1970), 398 U. S. 30, 90 Sup. Ct. 1564, 26 L. Ed. 2d 26. We not only accept the majority opinion of *Dickey* as we must, but applaud it as an excellent statement of the law. However, the facts in *Dickey* are so drastically different that we do not believe it is compelling authority to overrule the judgments

in this case. In *Dickey* the determinative facts are stated at page 36, as follows:

"The record in this case shows that petitioner was available to the State at all times during the seven-year period before his trial. The State suggests no tenable reason for deferring the trial in the face of petitioner's diligent and repeated efforts by motions in the state court in 1962, 1963, and 1966 to secure a prompt trial. In the interval two witnesses died and another potential defense witness is alleged to have become unavailable. Police records of possible relevance have been lost or destroyed."

Wiener did make a diligent and good-faith effort to secure the defendants.

In this case we are of the opinion that the delay was not unreasonable or prejudicial to the accused.

There is no evidence or contention that the defendants were in any way prejudiced in the trial of this matter. There is no claim of deceased or unavailable witnesses, or witnesses with hazy recollections, or loss of records.[3] Their federal sentences were not finalized when the proceedings were commenced in Wisconsin for the second time in April of 1969. It is hard to believe they were the victims of psychological trauma or that the delay in the state case affected any federal parole eligibility dates.

The delay was not, as suggested, the result of prosecutorial delay or indifference. The defendants were confined in the federal jurisdiction and were pursuing postconviction remedies. When Deputy District Attorney Wiener advised the district attorney, "It appears to me that there isn't anything we can do until the federal authorities get through with proceedings in the Federal Court," he had reasonable grounds for such a belief. This is apparent from the recitation of the facts as stated above.

---

[3] *See Dickey v. Florida, supra,* and *Smith v. Hooey* (1969), 393 U. S. 374, 89 Sup. Ct. 575, 21 L. Ed. 2d 607.

In January of 1969, the defendants were returned to Wisconsin for the specific purpose of participating in new trials on the federal charges. It is inconceivable that the federal authorities would or should interrupt their proceedings and release the defendants to the state authorities during February, March, April, May or June while a multitude of pretrial motions were presented and heard and new trials conducted.

It is further significant that the delay here could have been considerably less except for the intentional acts of the defendants in having the original proceedings dismissed because of the delay of preliminary examinations when the defendants knew they could not appear because the federal authorities would not allow them to do so. This is not to say that their actions were illegal or improper—but the fact remains it was their act that terminated the original proceedings and contributed to the delay.

We conclude that there was not an unreasonable delay caused by the state, that the defendants were not prejudiced, and that because of the seriousness of the crimes charged the rights of the public demanded a trial and not a dismissal of the charges.

*By the Court.*—Judgment and order affirmed.

WILKIE, J. (*dissenting*). The question to be determined in this appeal is whether a 254-day delay between appellants' demand for a speedy trial (July 22, 1968) and their arrest (April 2, 1969) constituted a violation of the constitutional mandates guaranteeing a criminal defendant the right to a speedy trial. This case raises a far worse situation than the typical case presenting the speedy trial issue. Here the delay was in simply arresting the appellants, not in scheduling their case for trial. Here, too, the delay was necessitated apparently only because the Milwaukee district attorney's office took over eight months to process the forms and send an officer to arrest appellants who were incarcerated for the final

three months in three neighboring county jails (Waukesha, Ozaukee, and Kenosha). Most of this time they were incarcerated in the Kenosha county jail, 40 miles from Milwaukee. On these facts I believe the delay unnecessary, unreasonable, and unconstitutional. I would reverse the convictions.

As the majority point out, a determination of whether a criminal defendant has been denied his right to a speedy trial is largely dependent on the facts of each case; there is no definite time after which a defendant is entitled to release.[1] In *State v. Fogle*[2] this court indicated that a defendant who makes various pretrial motions cannot assert that he has been denied a speedy trial because of the delay necessitated by his own motions. Here, however, the defendants did absolutely nothing to delay the proceedings, nor was the delay occasioned by a judge's illness as in *Kopacka v. State*[3] or by the need to prepare the prosecution as in *United States v. Ewell.*[4] Here the record discloses that the delay was occasioned by the district attorney's eight-month delay in filing the proper papers. The record is silent as to why such a length of time was required to perform such a simple task.[5] I conclude that the delay was not reasonable.

---

[1] Under sec. 971.10 (2) (a) of the new criminal procedure code, a defendant charged with a felony is entitled to a trial within ninety days of his demand. The statute provides, however, that such demand can be made only after arrest. Because this new statute applies only to prosecutions commenced after July 1, 1970, I do not reach the issue of whether the statute applies to the present situation.

[2] (1964), 25 Wis. 2d 257, 130 N. W. 2d 871.

[3] (1964), 22 Wis. 2d 457, 126 N. W. 2d 78.

[4] (1966), 383 U. S. 116, 86 Sup. Ct. 773, 15 L. Ed. 2d 627.

[5] 18 U. S. Code, sec. 4085, codifies the procedure to be followed by the state in securing the custody of a federal prisoner. In *Smith v. Hooey* (1969), 393 U. S. 374, 381, 89 Sup. Ct. 575, 21 L. Ed. 2d 607, the supreme court took note of the policy of the United States Bureau of Prisons to encourage the expeditious disposition of prosecutions in state courts against federal prisoners. The procedure to be followed is set out in footnote 13 in *Hooey*.

While a precise time cannot be set for determining when a defendant has been denied a speedy trial, the American Bar Association Project on Minimum Standards for Criminal Justice has set down general guidelines in its *Standards Relating to Speedy Trial*. In this case the conduct of the Milwaukee county district attorney's office is directly contrary to section 3.1 of the *Standards Relating to Speedy Trial* (Approved Draft, 1968). That section provides:

**"Prosecutor's obligations; notice to and availability of prisoner.**

"To protect the right to speedy trial of a person serving a term of imprisonment either within or without the jurisdiction, it should be provided by rule or statute and, where necessary, interstate compact, that:

"(a) If the prosecuting attorney knows that a person charged with a criminal offense is serving a term of imprisonment in a penal institution of that or another jurisdiction, he must promptly:

"(i) undertake to obtain the presence of the prisoner for trial; or

"(ii) cause a detainer to be filed with the official having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

"(b) If an official having custody of such a prisoner receives a detainer, he must promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs such official that he does demand trial, the official shall cause a certificate to that effect to be sent promptly to the prosecuting attorney who caused the detainer to be filed.

"(c) Upon receipt of such certificate, the prosecuting attorney must promptly seek to obtain the presence of the prisoner for trial.

"(d) When the official having custody of the prisoner receives from the prosecuting attorney a properly supported request for temporary custody of such prisoner for trial, the prisoner shall be made available to that prosecuting attorney (subject, in cases of interjurisdictional transfer, to the traditional right of the executive

to refuse transfer and the right of the prisoner to contest the legality of his delivery)."

Here the prosecutor took no action until long after the demand for a speedy trial was made.

The majority also assert that the eight-month delay was not prejudicial to appellants. The law requires, however, that when a violation of a constitutional right is involved the state must prove beyond a reasonable doubt that the deprivation is not prejudicial.[6] This requirement also applies to the denial of a speedy trial.[7] In the present case the state submitted a brief which was so long that parts of it were struck by order of the court, but not one word is devoted to demonstrating that the delay here was not prejudicial. Common sense dictates that such a delay would naturally cause the witnesses to remember less clearly the events surrounding the crimes and such a lapse of time would certainly deny a defendant the ability to locate witnesses and evidence needed for trial. In the absence of a showing by the state, I believe this court is required to assume that the delay *was* prejudicial. As stated by the United States Court of Appeals for the District of Columbia, "[d]enial of the Sixth Amendment right to speedy trial is a form of punishment never excused by a belated conviction." [8]

In *Dickey v. Florida* [9] the Supreme Court of the United States unanimously reversed the conviction of an armed robber and ordered him released from custody because he was not afforded a speedy trial. In so doing, Mr. Chief Justice BURGER, speaking for the court, pointed out:

---

[6] *Chapman v. California* (1967), 386 U. S. 18, 87 Sup. Ct. 824, 17 L. Ed. 2d 705; *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557.

[7] *See:* Cameron and Osborn, *When Harmless Error Isn't Harmless,* 1971 Law and the Social Order, 23, 34.

[8] *Hinton v. United States* (D. C. Cir. 1969), 424 Fed. 2d 876, 880.

[9] (1970), 398 U. S. 30, 37, 38, 90 Sup. Ct. 1564, 26 L. Ed. 2d 26.

"The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality in the need to have charges promptly exposed. If the case for the prosecution calls on the accused to meet charges rather than rest on the infirmities of the prosecution's case, as is the defendant's right, the time to meet them is when the case is fresh. Stale claims have never been favored by the law, and far less so in criminal cases. Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial. This is brought sharply into focus when, as here, the accused presses for an early confrontation with his accusers and with the State. Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable. Here, however, no valid reason for the delay existed; it was exclusively for the convenience of the State. On this record the delay with its consequent prejudice is intolerable as a matter of fact and impermissible as a matter of law. [Footnotes omitted.]"

The same principle applies in the present case. I would reverse the judgment with directions to dismiss the complaint.

I am authorized to state that Mr. Chief Justice HALLOWS and Mr. Justice HEFFERNAN join in this opinion.