DAY, Plaintiff in error, v. STATE, Defendant in error.

*No. State 29. Argued October 31, 1973.—Decided November 27 1973.*
(Also reported in 212 N. W. 2d 489.)

238

For the plaintiff in error there was a brief and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HANLEY, J. Four issues are raised on this appeal:

1. Was the defendant denied his right to a speedy trial as guaranteed by the sixth amendment of the United States Constitution and art. I, sec. 7 of the Wisconsin Constitution?

2. Was the seizure of evidence by Marquette county authorities valid?

3. Did the trial court err in refusing to grant the defendant's motion for a mistrial because of state's reference to the traffic offense for which the defendant was originally arrested?

4. Was the evidence sufficient to support a conviction?

*Speedy trial.*

Prior to the recent decision of *Barker v. Wingo* (1972), 407 U. S. 514, 92 Sup. Ct. 2182, 33 L. Ed. 2d 101, the essence of the right to a speedy trial had not been defined by the United States Supreme Court. In fact, the scope of the court's definition of that right was basically limited to a determination that such a right was necessarily relative and depended upon the circumstances of the individual case.[1] Subsequent to this definition, the court's main interest was in determining when the right was applicable as opposed to further defining the essence of the right.[2]

Similar to the federal experience, the right to a speedy trial was defined in Wisconsin as being relative and dependent upon the circumstances of the case. However, because of the contemporary problems of the overburdened prosecutor and the overcrowded court, this right

[1] *Beavers v. Haubert* (1905), 198 U. S. 77, 25 Sup. Ct. 573, 49 L. Ed. 950.

[2] In *Klopfer v. North Carolina* (1967), 386 U. S. 213, 87 Sup. Ct. 988, 18 L. Ed. 2d 1, the court ruled that the right to a speedy trial was fundamental and applied to the states under the due process clause of the fourteenth amendment.

has been somewhat clarified. Beginning with the case of *State v. Sawyer*,[3] this court has held that the right to a speedy trial and the resulting discharge for violation of that right was dependent upon the accused's demand thereto. In *State v. Carli* (1957), 2 Wis. 2d 429, 86 N. W. 2d 434, 87 N. W. 2d 830, this court held that a determination of whether the right to a speedy trial has been abridged depends upon the circumstances of the case. There the court ascertained that the fifteen-month delay resulted from a defect in the initial preliminary examination and the defendant's affidavit of prejudice. Since these delays were not the result of arbitrary judicial action and were reasonable, the defendant's right to a speedy trial was not abridged.

In *State ex rel. Fredenberg v. Byrne* (1963), 20 Wis. 2d 504, 123 N. W. 2d 305, this court held that the sixth amendment right to a speedy trial extends to the states. Determining that a period of approximately two years had elapsed since the issuance of a criminal complaint, the court issued a writ of mandamus compelling the counties in which such complaints were outstanding to either commence trial or to dismiss the complaints against him. This court's position as to a right to a speedy trial was analyzed in *Hansen v. State* (1965), 26 Wis. 2d 238, 131 N. W. 2d 837. Therein, it was determined that a period of twenty months between the issuance of a complaint and trial did not deprive the defendant of his right to a speedy trial. The court determined this was the case because no prejudice had resulted, because the defendant was not incarcerated, because of the necessity of providing an ordered court system inviolative of the defendant's rights and because of the necessity of affirmative action on the defendant's part. In *Hansen* the court cited *Kopacka v. State* (1964), 22 Wis. 2d 457, 461, 126 N. W. 2d 78, to the effect that:

---

[3] (1954), 266 Wis. 494, 63 N. W. 2d 749, certiorari denied, 348 U. S. 890, 75 Sup. Ct. 205, 99 L. Ed. 699.

"Mere lapse of time does not, by itself, constitute denial of the right to speedy trial . . . ."

These criteria in determining whether the defendant was, under the individual circumstances of his case, denied his right to a speedy trial have remained consistent since the *Hansen* decision in 1965. Affirmative action on the part of the defendant remains a condition precedent to the right becoming operative. *State v. Reynolds* (1965), 28 Wis. 2d 350, 137 N. W. 2d 14; *Commodore v. State* (1967), 33 Wis. 2d 373, 147 N. W. 2d 283; *Johnson v. State* (1968), 39 Wis. 2d 415, 159 N. W. 2d 48; *State v. Kwitek* (1972), 53 Wis. 2d 563, 193 N. W. 2d 682; *Taylor v. State* (1972), 55 Wis. 2d 168, 197 N. W. 2d 805. A mere lapse of time, absent more, does not constitute a denial of the right to a speedy trial. *State v. Stoeckle* (1969), 41 Wis. 2d 378, 164 N. W. 2d 303. Actual prejudice must result. *Williams v. State* (1968), 40 Wis. 2d 154, 161 N. W. 2d 218; *State v. Kwitek, supra.* Finally, in *Hansen v. State, supra, State v. Stoeckle, supra,* and *State v. Kwitek, supra,* this court refused to apply either sec. 971.10, Stats., or any other specific period of time as a standard upon which to determine whether the defendant's right to a speedy trial had been violated. While these criteria previously developed by this court generally remain valid, in light of the holding in *Barker v. Wingo, supra,* these criteria must be redefined.

*Barker* held that a determination of whether the defendant's right to a speedy trial were violated depended upon a balancing approach in which the conduct of both the prosecution and the defense were weighed. Some of the factors which the court should assess in applying the balancing approach consist of the following: the length of delay, the reason for the delay, the defendant's assertion of the right and the prejudice to the defendant.

The initial determination to be made, the court held, is the length of the delay. Seemingly, in so structuring the criteria upon which the determination of whether the right to a speedy trial had been denied, the court hoped to set the stage whereby courts or legislatures would automatically determine that a delay of a specific time would be unreasonable.

"Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at page 530.

Thus, until such a condition precedent was met, there would be no necessity in determining whether the defendant's sixth amendment right was violated.

Previously this court has been adverse to the implementation of a specific period of time as a standard upon which to determine whether or not the right to a speedy trial had been violated. In *State v. Kwitek, supra,* this court stated at page 571:

"While the legislature may, with propriety, adopt a numerical standard in calculating as a matter of public policy that charges should be dismissed after demand for trial and delay, we do not believe a court can fix such an arbitrary standard and base it upon judicial reasons."

We think that if a specific period of time is to be adopted as a condition precedent to the application of the balancing test, it should come from the legislature.

The second factor concerns itself with the reason for the delay. Some delays are more excusable than others. The illness of a witness for example is good cause for a continuance. In *State v. Taylor, supra,* this court held that the intervening illness of a state witness justified the delay.

Thirdly, *Barker* determined that though the demand-waiver rule presently applied in Wisconsin [4] should be

---

[4] *State v. Sawyer, supra; Kopacka v. State, supra;* and following cases.

avoided, the fact that the defendant failed to or did demand a speedy trial should be taken into account. The application of this factor presents no problem. However, language in previous decisions to the effect that failure to demand a speedy trial constitutes a waiver is withdrawn.

The final factor to be applied in determining whether the defendant was denied his right to a speedy trial concerns the prejudice to the defendant. The court commented that such prejudice should be assesed in light of the interests of the defendant which said right was designed to protect.

"This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo, supra,* at page 532.

These same interests have been recognized by this court in its previous decisions.

In applying the balancing test approach of *Barker* in the present action, it is clear that the defendant was not denied his right to a speedy trial. Though the delay between the defendant's arrest and his subsequent trial was in excess of seven months, such a delay was not so long as to individually establish a denial of the right to a speedy trial.[5] Likewise, the record indicates that the reason for the delay was not a deliberate attempt on the part of the state to hamper the defendant. Rather the delay resulted from the complexity of the case as shown in the amount of investigation and testing done by the state crime laboratory,[6] the necessity to appoint

---

[5] In *Commodore v. State, supra,* the court held a delay of nine months not oppressive. Similarly, delays of nine months in *State v. Williams, supra;* and nineteen months in *Taylor v. State, supra,* were held to be not oppressive.

[6] Laboratory investigation completed on July 10, 1972.

another judge because the initial judge recused himself and the fact that because of the remodeling of the Marquette county courthouse, jury facilities were not then available.

As to the third factor, the record indicates that the defendant did demand a speedy trial. However, this demand was not made until a period of approximately five months had elapsed and then said demand was met in a period of approximately two months. Finally, it cannot be contended that the defendant was in any way impaired in preparing his defense. The defendant's contention to the contrary—that the delay resulted in his inability to procure a witness—is without merit. The record indicates that the defendant's alleged witness had vanished as of the time he was arrested and the delay in no way hindered the defendant in procuring this witness. In fact, the period of delay may have been beneficial in allowing the defendant more time to locate his vanished witness. There is no indication that the defendant attempted to locate the alleged missing witness.

The only prejudice that was encountered by the defendant as a result of the seven-month delay was the oppressive pretrial detention which he was required to endure. However, balancing this prejudice as against the other factors referred to, it cannot be maintained that defendant was denied a speedy trial.

*Search and seizure.*

The defendant contends that the search and subsequent seizure of the contents of the Chevrolet station wagon was illegal and the fruits thereof should have been suppressed because this search could not qualify as an exception to the warrant requirement under the doctrines of search incident to an arrest or plain view. We do not agree.

The defendant's contention that seizure of the household goods in question by the Marquette county authorities could not qualify as a search incident to an arrest is meritorious. A search can be considered incident to an arrest only if it bears a relationship of contemporaneity to the arrest and is confined to the vicinity of the arrest. Here the seizure of the household goods took place several hours after the arrest and several miles from the presence of the defendant who was then incarcerated.

"Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." *Preston v. United States* (1964), 376 U. S. 364, 367, 84 Sup. Ct. 881, 11 L. Ed. 2d 777.

Merely because the evidence seized by Marquette county authorities fails to qualify as a search incident to an arrest, however, does not mandate that the evidence seized must be suppressed. If the police have a prior justification to be present in a position to view an object in plain view and if their discovery of that object is inadvertent, then the object may be seized. *Coolidge v. New Hampshire* (1971), 403 U. S. 443, 91 Sup. Ct. 2022, 29 L. Ed. 2d 564. Similarly, while the plain view doctrine is deemed an exception to the warrant requirement, it cannot constitutionally be deemed a search.

" 'A search implies a prying into hidden places for that which is concealed.' It is not a search to observe what is in plain view." *Edwards v. State* (1968), 38 Wis. 2d 332, 338, 156 N. W. 2d 397, citing *People v. Marvin* (1934), 358 Ill. 426, 428, 193 N. E. 202; *State v. Brown* (1964), 25 Wis. 2d 413, 418, 130 N. W. 2d 760.

In the case at bar, the Chevrolet wagon being driven by La Verne Day was stopped by Juneau county au-

thorities under suspicious circumstances. The car was transported by the police to a local gas station for safe-keeping because of the fact that neither driver nor passenger had a valid driver's license. The automobile was not impounded for its connection with the burglary of the Jerry Polacek residence and so under the proper circumstances it could have been removed by the defendant or his agent. While the automobile was parked inside the gas station Sheriff Chase inadvertently noticed the box with the name of Jerry Polacek attached to it. Later Marquette county authorities similarly viewed the evidence in plain view and seized and removed it to Marquette county, the jurisdiction in which the burglary occurred.

The defendant contends that the discovery of the evidence by both the Juneau and Marquette county authorities was an illegal search and the subsequent seizure was also illegal. Such is not the case. The initial discovery of the evidence by Juneau county authorities clearly qualifies as an exception to the warrant requirement under the "plain view" doctrine. The discovery by Sheriff Chase was clearly inadvertent. Similarly, Sheriff Chase was justifiably present in the position whereby he could observe the evidence.[7] Thus, a subsequent seizure of the stolen goods by Sheriff Chase once it had been determined that the articles in question had been stolen would have been clearly legal. *State v. Taylor* (1973), 60 Wis. 2d 506, 210 N. W. 2d 873; *Mears v. State* (1971), 52 Wis. 2d 435, 190 N. W. 2d

---

[7] Sheriff Chase and fellow law enforcement officers had justifiably arrested the defendant and removed the automobile to the Mobil station because of the car and driver's improper licensing and the valuable goods located in and upon the automobile. Similarly, Sheriff Chase's presence at the Mobil station was justified in that he had previously just deposited the automobile in question there.

184; *Milburn v. State* (1971), 50 Wis. 2d 53, 183 N. W. 2d 70.

It is argued, however, that though the initial discovery of the evidence by Juneau county officials was constitutionally antiseptic, the subsequent discovery and seizure of the evidence by Marquette county officials was clearly outside the ambit of the "plain view" doctrine. Such a position is unsupportable. In *Milburn v. State, supra,* a similar situation arose. There, the police initially stopped the defendants for questioning because of the suspicious circumstances involved in their presence in the area. Upon shining a flashlight into the automobile, Officer Christnagel noticed a large quantity of silver coins, a brown leather key case and checks bearing the imprint "Farmers and Merchants Bank." After questioning the defendants at the station they were released. Later, it was discovered that the evidence seen by Officer Christnagel was the fruits of an earlier robbery of Berger Brothers and the defendants were again arrested. The defendants' car was not located for some time afterwards. Upon discovering the defendants' automobile in a ditch, police officers entered and removed the previously discovered evidence. The defendants moved unsuccessfully to suppress the evidence at the trial and this court affirmed an appeal. Since the evidence had been discovered previously by police while in plain view, they were presently seizable. Such, the court held, did not constitute a general exploratory search.

"Moreover, they had received prior reliable information about the existence of these items in the car and, hence, they were not engaged in a 'quest' for evidence about which they had no prior knowledge." *Id.* at page 59.

The holding of the United States Supreme Court in *Coolidge v. New Hampshire, supra,* which was decided

subsequently does not limit the holding of *Milburn.* *Coolidge* only required that the initial discovery of the evidence be inadvertent.[8]

"The second limitation is that the *discovery* of evidence in plain view must be inadvertent." *Id.* at page 469. (Emphasis added.)

In fact, it is our opinion that *Coolidge* has been often misunderstood. *Coolidge,* as Mr. Justice HEFFERNAN points out in *State v. Taylor, supra,* is limited to "planned warrantless seizures." *Coolidge* did not in any way limit the previous holding in *Chambers v. Maroney* (1970), 399 U. S. 42, 90 Sup. Ct. 1975, 26 L. Ed. 2d 419. This was made clear in the recent holding of *Cady v. Dombrowski* (1973), 413 U. S. 433, 93 Sup. Ct. 2523, 37 L. Ed. 2d 706, wherein the court went to great lengths to distinguish between the warrant requirements necessary to search homes and automobiles. Though the initial rationale as to the distinction concerned the ambulatory nature of the automobile, Mr. Justice REHNQUIST commented that ". . . warrantless searches of vehicles by state officers have been sustained in cases in which the possibilities of the vehicle being removed or evidence in it destroyed were remote, if not nonexistent." *Id.* at 441. The reason for this, he continues, stems from the ambulatory nature of the automobile and ". . . from the fact that the extensive and often non-criminal contact with automobiles will bring local officials in 'plain view' of evidence, fruits or instrumentalities of a crime, or contraband." *Id.* at 442.

Since the search in the present action was not a "planned warrantless search," and since the Juneau county authorities would have been justified to seize the evidence once knowledge to that effect had arisen,

---

[8] At 403 U. S. 463 n. 20 the court emphasized that the cardinal issue was whether the "initial intrusion" was warranted. *See also: United States v. Carneglia* (2d Cir. 1972), 468 Fed. 2d 1084.

any later intrusion and viewing of the evidence in plain view by Marquette county authorities was reasonable and the evidence so seized by them is not suppressible.

*Prior crimes.*

The defendant contends that the court erred in refusing to grant the defendant's motion for a mistrial because of the prosecutor's references to the fact that the defendant had been arrested at the time in question for driving after revocation, a criminal violation. We think this contention is without merit. Our review of the record indicates that the defense counsel, like the prosecutor, elicited testimony as to the fact that the defendant had been arrested for a traffic violation at the time in question. Because of such action on the part of the defense attorney, reversal is not warranted. In *Taylor v. State* (1971), 52 Wis. 2d 453, 458, 190 N. W. 2d 208, this court stated:

". . . [N]o reversal is warranted when the defense had previously brought out the facts alleged to be prejudicial."

*Sufficiency of the evidence.*

Defendant contends that the evidence was insufficient to support his conviction. The defendant bases his contention on our decision in *State v. Johnson* (1960), 11 Wis. 2d 130, 104 N. W. 2d 379, wherein this court stated:

"Mere possession of stolen property raises no inference of guilt, but Wisconsin from early times has followed the rule that unexplained possession of recently stolen goods raises an inference of greater or less weight, depending upon the circumstances, that the possessor is guilty of the theft and also of burglary if they were stolen in a burglary. Such inference being in the nature of a presumption of fact calls for an explanation of how the possessor obtained the property. Such presumption is not conclusive and may be rebutted." *Id.* at page 139.

However, the defendant overlooks the fact that said presumption was not the only evidence adduced at his trial. Ample circumstantial evidence was adduced. In *State v. Johnson, Id.* at page 134, we stated:

"The evidence against him is entirely circumstantial, but this is not unusual in a criminal case. Not many criminals are caught in the act like a child with his hand in the cooky jar. Circumstantial evidence may be and often is stronger and as convincing as direct evidence."

Here the circumstantial evidence found at the Polacek residence consisted of tire tracks, footprints, pieces of fabric and rusted metal, hair and the fingerprints of the defendant's brother on the television, all in some manner tied to the defendant. We conclude that said evidence is conclusive in nature and so convincing as to exclude any possibility that someone other than the defendant committed the crime.

*By the Court.*—Judgment affirmed.