HADLEY, Plaintiff in error, v. STATE, Defendant in error.

*No. State 120. Argued October 2, 1974.—Decided February 4, 1975.*
(Also reported in 225 N. W. 2d 461.)

For the plaintiff in error there were briefs by *Howard B. Eisenberg,* state public defender, and *Ronald L. Brandt,* assistant state public defender, and oral argument by *Mr. Brandt.*

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J. The issue presented in this case is whether the defendant Hadley, originally charged on March 16, 1972, and finally tried and found guilty on September 26, 1973, was denied his right to a speedy trial as required by the sixth amendment to the Constitution of the United States and art. I, sec. 7, of the Wisconsin Constitution. We hold that Hadley was denied the constitutional right to a speedy trial. The charges against him, therefore, must be dismissed.

This appeal grows out of two incidents of armed robbery, one occurring on December 9, 1971, and the other on January 30, 1972. A complaint was filed on March 16, 1972, charging Hadley with participation in each robbery. Initially, the judicial process moved swiftly. Hadley made his first appearance before a magistrate on March 16, 1972. A preliminary hearing, which found that there was probable cause to bind Hadley over for trial on each of the counts, was held on March 23, 1972. The district attorney filed the information with the court on March 24, 1972. The arraignment was conducted before Circuit Judge M. EUGENE BAKER on April 7, 1972, and on that date the defendant pleaded not guilty to these two armed robberies and to two other armed robberies charged in a separate information. Bail was set on all four counts and also upon a separate count of armed robbery, on which Hadley had been arraigned on March 14, 1972. Hadley remained in custody during the entire course of these proceedings and is presently imprisoned at the State Reformatory at Green Bay.

At the arraignment on April 7, 1972, Hadley's counsel invited the court's attention to the fact that a trial had been scheduled for April 12, 1972, in respect to the charge of armed robbery on which the defendant had previously

been arraigned on March 14, 1972. Counsel asked for a postponement of that trial because, he stated, that the informations newly filed raised additional problems that required his attention and he would not be able to prepare for the trial of the case already scheduled on April 12, 1972. Counsel stated:

"So what I am suggesting to the Court is this: If we can from the clerk either now or at some later point in the day obtain trial dates on each of these three files at a point six to eight weeks from now, I feel that it would give the defense adequate time to prepare and still be well within the three-month period required by statute for a speedy jury trial." [1]

Although Hadley's counsel requested a trial date on all cases within eight weeks, the trial judge responded to the request only by adjourning the trial date already scheduled and stated that the trial in that case would be set up "within the next 60 days." The district attorney moved for the consolidation of all the charges so that

---

[1] Sec. 971.10, Stats., provides:

"971.10 **Speedy trial.** (1) In misdemeanor actions trial shall commence within 60 days from the date of the defendant's initial appearance in court.

"(2) (a) The trial of a defendant charged with a felony shall commence within 90 days from the date trial is demanded by any party in writing or on the record. If the demand is made in writing, a copy shall be served upon the opposing party. The demand may not be made until after the filing of the information or indictment.

"(b) If the court is unable to schedule a trial pursuant to par. (a), the court shall request assignment of another judge pursuant to s. 251.182.

"(3) (a) The court may continue a case for cause on its own motion or on application of any party. Further continuances may be granted for cause, but no continuance shall be for a period in excess of 60 days.

"(b) Continuances may be granted on stipulation of the parties for periods not to exceed 60 days.

"(4) Every defendant not tried in accordance with this section shall be discharged from custody or released from the obligations of his bond."

they could be handled in a single trial. The trial judge took that motion under consideration and stated that he would eventually call a pretrial conference, at which time he would determine whether the remaining cases could be consolidated. The record does not reveal any decision on the district attorney's motion for consolidation, nor does there appear to have been a pretrial conference called by Judge BAKER.

The principal witness, an alleged accomplice in the robberies, had already been given immunity in exchange for his agreement to testify against Hadley. That witness, Campbell, remained available to the prosecution and was incarcerated during the entire course of these proceedings.

Shortly after the date of arraignment, Judge BAKER became ill, and it was not until July 6, 1972, that this court assigned Judge JOHN A. FIORENZA of Milwaukee to try the case involved in this appeal.

The record thereafter is barren of any further procedures in this case or any related cases until September 11, 1972. On that date Judge FIORENZA heard defendant's motion to dismiss for want of a speedy trial. The record of the hearing held that day, however, refers to a conference in the presence of Judge FIORENZA on August 26, 1972. Judge FIORENZA recited that, in the August pretrial conference, the question of speedy trial had come up. He concluded that a demand for speedy trial had been made on the record on April 7, 1972. He also concluded, in response to the defendant's motion for dismissal for failure to grant a speedy trial, that the defendant had not received a speedy trial as required by sec. 971.10, Stats. In accordance with the provisions of that statute, he accorded the defendant the only remedy statutorily available, to release the defendant from custody and to discharge him from any obligations on his bond.

Judge FIORENZA refused to dismiss the charges because he concluded there had not been a denial of the constitutional right of speedy trial. Although Judge FIORENZA

found that a demand for speedy trial was made in April and the case had not been brought to trial by September 11th, a period of five months, he noted that the defendant's counsel at the arraignment requested adjournment of eight weeks in order that he might be prepared to try all of the cases. Judge FIORENZA, therefore, reasoned that at least two months of the elapsed time was chargeable to the defendant's request and that the remaining period of three months was not such an inordinate delay that there ought to be a dismissal as a matter of constitutional right. During the course of the pretrial conference on September 11, 1972, the district attorney admitted that some cases junior in time to Hadley's cases had been tried first. At this same pretrial conference, counsel for Hadley made another demand on the record for a speedy trial, stating:

"So, of course, again it's our demand that all counts be heard as swiftly as possibly and . . . we simply want to make the record and ask that the cases be heard back to back."

In order to facilitate the trial of the cases, counsel for the defendant agreed that all pending cases against Hadley could be tried by a jury drawn from the same panel. Judge FIORENZA thereupon set the cases for trial, with the first case to be tried on September 27, 1972. Despite the fact this trial date was set, for reasons not explained in the record no trial was held on that date.

Although the defendant was ordered released from custody and discharged from bail because of the state's violation of the statutory provisions for speedy trial, he in fact was not released because of the pendency of a detainer which had been filed by the state of Illinois.

Judge FIORENZA'S assignment in Kenosha was terminated on November 27, 1972, without that judge having tried all the cases. The trial record reveals, however, that in October, 1972, Hadley was convicted of a separate crime of armed robbery and was sentenced to the State Reformatory for a term not to exceed six years.

On June 26, 1973, the two particular charges that are the subject of this appeal, denominated in the record as 1356–C, and two armed robbery charges, denominated in the record as 1355–C, were set for trial before Judge MORTON, who had become the circuit judge for Kenosha county. Hadley's attorney moved to dismiss both of these cases, because his client had not been accorded a speedy trial.

There is nothing in the record to show any activity on any of the charges against Hadley from October, 1972, until June, 1973. On June 26, 1973, Judge Morton refused to rule on the question of speedy trial because the alleged excessive delay had just been called to his attention, but proceeded to trial on the case captioned 1355–C.[2] On September 18, 1973, he denied a renewed motion for dismissal of all the remaining cases for want of a speedy trial.

The remaining case—the two counts that are the subject of this appeal and for which the defendant was originally arraigned on April 7, 1972—was called for trial by Judge MORTON on September 25, 1973. Prior to the impanelling of the jury on that date, defense counsel again moved the court for a dismissal because the defendant had not been afforded a speedy trial. At that time he specifically made a demand for a speedy trial, stating, "I am not requesting any adjournment . . . because Mr. Hadley wants a speedy trial." [3]

[2] We have no transcript of that case. However, in a transcript of a hearing on September 18, 1973, Judge MORTON stated that he had dismissed one count of 1355–C because he was of the opinion that the prosecution was unable to go forward. The record also indicates, although not clearly, that the remaining count in 1355–C was also dismissed before the case that is the subject of this appeal went to trial.

[3] There was arguably an insufficiency in the state's notice of intended witnesses. In the pretrial conference it was suggested that the state's late filing of the witness list could be cured by adjourning the trial date.

The motion for dismissal was denied after the assistant district attorney stated that the delay had been occasioned by the illness of Judge BAKER and further stated, ". . . in cases such as armed robbery . . . it is not unusual that cases of this nature do take the amount of time that these have to come to trial." The motion for the dismissal for want of speedy trial was denied because, ". . . all parties concerned, including the Court, have done all that is possible since I have been on this bench to bring all of Mr. Hadley's cases to trial." The judge stated that there were numerous other criminal cases that also had the right to be heard and that, in many instances, civil cases had been taken off the calendar in order that the criminal cases could be tried.

The case proceeded to trial, and the defendant was found guilty on both counts. The case took approximately six hours to try. The testimony was substantially completed on the first day despite the fact that a major portion of the morning was devoted to preliminary motions, and the second day of the trial consisted mainly of closing arguments and the return of the jury's verdict. It was a simple case to try.

The principal witness for the prosecution was Jimmie Lee Campbell, an accomplice, who testified that Hadley was involved in both of the armed robberies. Campbell had been given immunity in March of 1972 to testify in respect to these cases and had been under supervision since that time.

The trial did not raise any substantial question of Hadley's guilt; and on the basis of the record, we conclude that the jury properly found Hadley guilty beyond a reasonable doubt.

After the return of the verdict, the defendant's counsel again renewed his motion to dismiss because of the denial of speedy trial. The motion was denied, and on September 28, 1973, Judge MORTON sentenced Hadley to a term

of eight to ten years on one count and five to seven years on the other count, with these sentences to be consecutive to each other and with both sentences consecutive to the six-year term which Hadley was already serving.

On this appeal the state argues that there were obvious reasons for the delay. It contends initially that two months of the eighteen-month delay is attributable to the defendant's request at arraignment that trial be held no sooner than six to eight weeks thereafter. The state's conclusion, therefore, is that a request for a reasonable adjournment to prepare for trial should be charged against the defendant and constitutes a waiver, *pro tanto,* of the right to speedy trial.

The state also argues that a portion of the original delay was occasioned by the illness of the original judge and the new judge acted within two months of his appointment. No reference is made in the state's brief to the period of inactivity on the case from September 11, 1972, until June 26, 1973, nor is any explanation given why the cases set for trial on September 27, 1972, were not tried. Nor is any reference made to defense counsel's renewed demand on September 11, 1972, that all cases be heard as swiftly as possible. The state also contends that the defendant has brought forth no facts which would show prejudice.

Each of these arguments by the state is convincingly refuted by decisions of the United States Supreme Court. *Barker v. Wingo* (1972), 407 U. S. 514, 92 Sup. Ct. 2182, 33 L. Ed. 2d 101, and followed in *Day v. State* (1973), 61 Wis. 2d 236, 212 N. W. 2d 489, specifically repudiated the demand-waiver rule for numerous reasons. One of the reasons given in *Barker* was that it placed defense counsel in an awkward position. The court stated:

"If counsel is willing to tolerate some delay because he finds it reasonable and helpful in preparing his own case, he may be unable to obtain a speedy trial for his client at the end of that time." (P. 527)

Under *Barker*, which repudiated the demand-waiver rule in its totality, a reasonable request by counsel for time to prepare for trial cannot be interpreted as a wilful delay of the trial or be used by the state to circumvent a defendant's constitutional right to a speedy trial. The two-month period should not have been deducted. Judge FIORENZA properly concluded, in ruling upon the statutory right to speedy trial, that the reasonable time for preparation should not be deducted from the statutory ninety-day period in which felony cases must be brought to trial. Similar reasoning should have impelled him to come to the conclusion that no deduction for reasonable preparation time should have been made in ascertaining whether the defendant's constitutional right to speedy trial had been denied. We do not, however, in this appeal conclude that he erred in failing to dismiss the case in September of 1972, after a lapse of only five months. We merely point out that the entire period of five months should have been considered in the determination of the constitutional deprivation.

Despite the fact that *Barker v. Wingo* repudiated the demand-waiver rule, the record here shows a demand for trial on at least three occasions: April 7, 1972, the date of arraignment; September 11, 1972, the date upon which Judge FIORENZA found a denial of the statutory right of speedy trial; and on September 25, 1973, shortly before the trial actually took place. In addition, motions to dismiss for a lack of speedy trial were presented to the court on at least five occasions.

The record makes clear that the defendant was more than diligent in making a demand for trial, and on numerous occasions he called the court's attention to the fact that he was not receiving his constitutional right to a speedy trial. Yet, as the United States Supreme Court points out, this was not his responsibility. The *Barker*

court stated that the burden of protecting the right of speedy trial does not fall on defendants:

"A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process." (P. 527) [4]

Nevertheless, the *Barker* court stated that the defendant had some responsibility to assert the right to speedy trial. The court carefully pointed out, however, that the purpose of requiring some showing of assertion of right was necessary to distinguish cases, such as *Barker* itself, where there was evidence that the defendant did not want to be brought to trial. The repeated assertion of the right to speedy trial in this case puts Hadley completely out of the category of defendants who are consciously seeking to avoid the day of reckoning.

While the language of *Barker* is controlling in this case, the fact situation must be sharply distinguished. In *Barker,* the defendant's counsel admitted in court that his client did not wish to be tried. In a concurring opinion, Mr. Justice WHITE stated that, ". . . it is apparent that had Barker not so clearly acquiesced in the major delays involved in this case," (P. 537) the result would have been the deprivation of the constitutional right to speedy trial.

---

[4] Standard 1.2 of the American Bar Association *Standards Relating to Speedy Trial* (Approved Draft 1968), pages 11–13, recommends vesting control over the criminal calendar in the trial court and assigning the prosecutor the responsibility of periodically filing reports with the court setting forth the reasons for delay as to each case for which he has not requested trial within a prescribed time following charging. The standard also recommends requiring the prosecutor to advise the court of facts relevant in determining the order of cases on the calendar.

Standard 3.8 of the American Bar Association *Standards Relating to the Function of the Trial Judge* (Approved Draft 1972), pages 48–50, and Standard 5.1 of the American Bar Association *Standards Relating to The Prosecution Function and The Defense Function* (Approved Draft 1971), pages 112, 113, make similar recommendations.

A portion of the *Barker* delay was occasioned by the illness of the sheriff. The sheriff in that case was the chief investigating officer and the case could not have proceeded without him. Yet, as the concurring opinion of Mr. Justice WHITE shows, a delay for the period of the sheriff's disability was not sufficient in itself to justify the denial of a speedy trial. Dismissal was denied only because it was clear to the supreme court that Barker did not want to be tried at all. *Barker,* nevertheless, recognized that an appropriate delay could be justified for a valid reason, such as the inability of the state to produce a necessary witness. For the period of the sheriff's illness in *Barker,* the delay was therefore appropriate. The additional delay was not justified.

What is a valid reason for a delay is further explained by the supreme court. It must be a delay that is intrinsic to the case itself. As Mr. Justice WHITE stated in his concurring opinion to *Barker, supra,* page 537:

". . . only special circumstances presenting a more pressing public need with respect to the case itself should suffice to justify delay. Only if such special considerations are in the case and if they outweigh the inevitable personal prejudice resulting from delay would it be necessary to consider whether there has been or would be prejudice to the defense at trial. '[T]he major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense.' *United States v. Marion* [(1971), 404 U. S. 307, 92 Sup. Ct. 455, 30 L. Ed. 2d 468], *supra,* at 320."

Mr. Justice BRENNAN in the concurrence to *Dickey v. Florida* (1970), 398 U. S. 30, 52, 90 Sup. Ct. 1564, 26 L. Ed. 2d 26, referred to an excusable delay as one of intrinsic importance to the case. The illness of a judge before trial commences is not intrinsic to the case itself. A case can be tried by any judge assigned by this court. A missing witness or an ill witness cannot be supplied by the fiat of this court. The fact that Judge BAKER was

ill is no excuse for the state's failure to bring this case to trial. Other judges were available, and if they were not, the fault lay not with the defendant but with the resources of the system of court administration in this state. *Barker* points out that, where the delay is the result of overcrowded courts or lack of judicial manpower, ". . . such circumstances must rest with the government rather than with the defendant." (P. 531)

*Barker*, although stressing that neither one nor all of the four factors set forth therein for the exercise of judicial discretion in protecting the right of speedy trial were "talismanic," stated the criteria: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (P. 530)

At least three of the factors which would lead a court to conclude that there was a deprivation of the constitutional right of speedy trial are affirmatively present in this case:

1. The delay of almost eighteen months was so excessive that it leads prima facie to the inquiry of whether there was a denial of speedy trial.

2. The delay is at best entirely explainable because of the inability of the state of Wisconsin to have available in a timely manner judicial and prosecutorial manpower.

3. The defendant early asserted his right and continued to make the assertion of the right to speedy trial until the very date the cases were tried. There is absolutely no evidence in this record that the defendant sought any delay beyond the short and reasonable time that was necessary for counsel to prepare his cases.

These three factors, together with the fourth—prejudice to the defendant—are the components of the test suggested in *Barker*. The state rests heavily upon the argument: "[D]efendant brings forth absolutely no facts which show prejudice." *Barker,* however, pointed out that none of the four factors was "either a necessary or sufficient condition to the finding of a deprivation of the

right of speedy trial." (P. 533) A reasonable reading of *Barker* leads to the inevitable conclusion that no burden is placed upon the defendant to show he was prejudiced in fact. Moreover, *Barker* holds that the assertion of the right to speedy trial is in itself probative of prejudice. While that case recognizes that there may indeed be prejudice in fact because of the inability to produce defense witnesses after a protracted period of time, most interests of a defendant are prejudiced as a matter of law whenever the delay, not the result of the defendant's conduct, is excessive. *See: Barker*, pages 532, 533. If there were ever any doubt of this, it was laid to rest in *Moore v. Arizona* (1973), 414 U. S. 25, 26, 94 Sup. Ct. 188, 38 L Ed. 2d 183. The Arizona Supreme Court had concluded that a showing of prejudice to the defense at trial was essential to establish a deprivation of a constitutional right of speedy trial. The Supreme Court of the United States in *Moore* stated:

"The state court was in fundamental error in its reading of *Barker v. Wingo* and in the standard applied in judging petitioner's speedy trial claim. *Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial." (P. 26)

Where there have been repeated demands, as there were in the instant case, the question, the United States Supreme Court in *Moore* points out, is: "[D]id the State discharge its 'constitutional duty to make a diligent, good-faith effort to bring him [to trial].'" (brackets in quote) (P. 26) The state argues that Hadley was not subject to any oppressive pretrial incarceration because, during the entire period, he was held either because of a detainer warrant from Illinois or because of another conviction which resulted in his incarceration at the Green Bay State Reformatory. The United States Supreme Court in *Smith v. Hooey* (1969), 393 U. S. 374, 89 Sup. Ct. 575, 21 L. Ed. 2d 607, stated the obvious—that even

though a defendant is otherwise detained, the failure to have a pending charge brought to trial completely eliminates the possibility that concurrent sentences could be imposed. Incarceration for other reasons, no matter how legitimate they may be, is simply dead-time in terms of awaiting a trial upon a criminal charge which is delayed.

We believe that the emphasis of the state's brief, relying entirely, as it does, upon speedy trial as a constitutional protection afforded to an accused, overlooks the far more important constitutional purpose of protecting the interests of society. While it is important from a defendant's point of view that he be tried promptly so that his future status is put to rest and he is either acquitted or subjected to the penalties of the law, the paramount interest is society's concern that all criminal cases be disposed of speedily.

*Klopfer v. North Carolina* (1967), 386 U. S. 213, 87 Sup. Ct. 988, 18 L. Ed. 2d 1, discusses the background reasons for the founding fathers' insistence upon placing the right of speedy trial in the Bill of Rights to the constitution. That case traces the genesis of the doctrine of speedy trial from the Assize of Clarendon (1166 A. D.) to the Magna Carta and the doctrines set forth by Sir Edward Coke. *Klopfer* points out that the failure to grant a speedy trial is a blot upon a system of justice and that, from earliest recorded times in terms of English constitutional history, it has been recognized as an obligation of government to see that speedy trial was afforded primarily not for the benefit of accuseds but to advance the interests of a system of justice and of society itself.

*Barker* emphasizes the interests of a justice-seeking nation in insuring that a speedy trial be afforded. Mr. Justice POWELL, writing for the court, stated:

"The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated accord-

ing to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. It must be of little comfort to the residents of Christian County, Kentucky, to know that Barker was at large on bail for over four years while accused of a vicious and brutal murder of which he was ultimately convicted. Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation.

"If an accused cannot make bail, he is generally confined, as was Barker for 10 months, in a local jail. This contributes to the overcrowding and generally deplorable state of those institutions. Lengthy exposure to these conditions 'has a destructive effect on human character and makes the rehabilitation of the individual offender much more difficult.' At times the result may even be violent rioting. Finally, lengthy pretrial detention is costly. The cost of maintaining a prisoner in jail varies from $3 to $9 per day, and this amounts to millions across the Nation. In addition, society loses wages which might have been earned, and it must often support families of incarcerated breadwinners." (Pp. 519–521) [5]

This recitation by the United States Supreme Court demonstrates that we do no favor to the public when we permit persons accused of crime to escape the disposition of their cases by tolerating unreasonable delay in reaching a decision on the merits.

---

[5] The average daily per capita cost of keeping a prisoner in the Green Bay Reformatory was $19.96 as of June, 1973, as reported by the Division of Corrections of the Department of Health & Social Services. The minimum daily per capita cost for keeping a prisoner in the Kenosha county jail has been reported to be $5.50. Dane county has reported a corresponding cost of $8.26 as of June, 1973.

We reiterate the rationale of *Barker,* quoted above, in which the court pointed out that, as a consequence of the failure to provide a speedy trial, "Barker was at large on bail for over four years while accused of a vicious and brutal murder . . . ." Under sec. 971.10, Stats., Hadley, an armed robber, was, under the mandate of the legislature, released on bail. Only the fortuitous circumstance that he was held on an Illinois detainer and a separate conviction prevented this dangerous criminal from being at large for the additional thirteen months in which his trial was delayed. It is contrary to the public interest to weasel word a record in an attempt to justify shortcomings of a judicial system that permits an excessive delay that jeopardizes public welfare and public safety.

Prosecutors and judges, including this court itself, must recognize that the failure to insure a speedy trial is not in the interests of law enforcement and public order but is contrary to it. The controlling factor, however, is that speedy trial is a constitutional right, guaranteed to the public as well as to a defendant, which the courts have the ultimate obligation to re-affirm whenever the necessity becomes apparent.

The remedy for the lack of a speedy trial is a drastic one. *Barker v. Wingo* recognized this. It points out that the denial of the right to a speedy trial leads to the severe remedy of dismissal of the indictment.

"This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried. Such a remedy is more serious than an exclusionary rule or a reversal for a new trial. . . ." *Barker,* page 522.

Because the United States Supreme Court concluded that Barker was indeed attempting to avoid a speedy trial, that remedy was not imposed in his case. However, in a more recent case, *Strunk v. United States* (1973), 412 U. S. 434, 93 Sup. Ct. 2260, 37 L Ed. 2d 56, Mr. Chief Justice BURGER wrote for a unanimous court that,

although *Barker* recognized the severe remedy that was occasioned when the denial of the right to speedy trial was found:

". . . such severe remedies are not unique in the application of constitutional standards. In light of the policies which underlie the right to a speedy trial, dismissal must remain, as *Barker* noted, 'the only possible remedy.' " (Pp. 439, 440)

A similar result was reached recently in *United States v. West* (D. C. Cir. 1974), 504 Fed. 2d 253. Therein, a unanimous court found that a thirteen-month delay between the arrest and trial of a defendant violated the sixth amendment right to a speedy trial. The court specifically found, consistent with *Barker* and *Moore,* that:

"Although West was not prejudiced at his trial by the pretrial delay, he was in jail for thirteen months between his arrest and trial. Extended pretrial detention oppresses the accused and destroys the presumption of innocence." (P. 256)

That court recognized that, even though the reason was calendar congestion and lack of judicial manpower, such "institutional delays must still be charged to the government." (P. 256) The court stated, "The public interest in speedy trials can only be protected by imposing sanctions on the government when the criminal justice system is responsible for unjustifiable pretrial delays," (p. 256) and that, when court congestion rather than the acts of the defendant caused the delay, the indictment must be dismissed.

A review of the record in this case in its totality shows—and this court can take judicial notice of the fact —that the judicial system and the prosecutorial system of Wisconsin are overburdened. Although the continued improvement in the techniques of court administration, in some cases, alleviates the problems which this case demonstrates, essentially the deficiency is the result of the court system's fiscal inability to deal speedily with the

problems that are presented by modern society. The judges involved in this particular case were overworked, and the court was undermanned, both in terms of judicial manpower and supporting staff. While the court system itself has great responsibility to see to it that what resources it has operate as efficiently and as justly as possible, constitutional liberties will only be preserved if the legislature places at the disposal of the judicial branch of government adequate resources to meet the challenges that are daily apparent in our courts.

Since we find that the charges must be dismissed because of the failure to afford a speedy trial, other alleged errors at trial are irrelevant.

As in the case of the alleged errors at trial, the erroneous sentences that improperly imposed a minimum term are irrelevant and must be set aside in accordance with the dismissal of the charges.

In this case, although Hadley is discharged of the sentences imposed as a result of the armed robberies on December 9, 1971, and January 30, 1972, he remains in custody as the result of the now finalized conviction and sentence arising out of another robbery for which he was sentenced to a prison term of six years.

*By the Court.*—Judgment of conviction and sentence vacated, and cause remanded to the trial court with instructions to dismiss the complaint and information.

ROBERT W. HANSEN, J. *(dissenting)*. There was a time when the saying in underworld circles was, "Pull a job in Wisconsin one day, and you're on your way to Waupun the next day." Caught red-handed and pleading guilty, that might well have been the result. Times have changed. More crimes are committed and more cases are brought to court. The invitation to extended negotiations for bargained pleas has created an added incentive to defense-procured delays. Multiple opportunities for pretrial challenges to pleadings and procedures and mandated hear-

ings as to admissibility of evidence result in trials delayed. Engineering such delays has become an arrow in the defense quiver. Months, not days or weeks, often separate the filing of a criminal complaint and trial of the case, even where the eventual plea is guilty and the trial brief. Along with inbuilt delays and crowded court calendars, there come, predictably, multiplied claims by defendants that they ought to be free because they were denied a constitutional right to a speedy trial.[1]

Following the United States Supreme Court decision in *Barker v. Wingo,*[2] this court, in *Day v. State,* a 1973 decision,[3] adopted the balancing of relevant factors test, mandated by *Barker,* and set forth ". . . criteria [to be used] in determining whether the defendant was, under the individual circumstances of his case, denied his right to a speedy trial . . . ."[4] The writer would follow such balancing test in determining whether the defendant in the case before us was, under these circumstances, denied a speedy trial.

*"Mere lapse of time."*

*Lapse of time not enough.* In *Day,* this court clearly held that: ". . . A mere lapse of time, absent more, does not constitute a denial of the right to a speedy trial. . . ."[5] The court thus reaffirmed its earlier holdings, quoting from one, that: " 'Mere lapse of time does not,

[1] Art. VI, Amendments to the United States Constitution, providing: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." *See also:* Art. I, sec. 7, Wisconsin Constitution, providing for ". . . a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed . . . ."

[2] (1972), 407 U. S. 514, 92 Sup. Ct. 2182, 33 L. Ed. 2d 101.

[3] (1973), 61 Wis. 2d 236, 212 N. W. 2d 489.

[4] *Id.* at page 244.

[5] *Id.* at page 244, citing as to requirement of actual prejudice: *Williams v. State* (1968), 40 Wis. 2d 154, 161 N. W. 2d 218; *State v. Kwitek* (1972), 53 Wis. 2d 563, 193 N. W. 2d 682.

by itself, constitute denial of the right to speedy trial
. . . .' " [6] Quoting from *Barker* that: " 'Until there is
some delay which is presumptively prejudicial, there is
no necessity for inquiry into the other factors that go
into the balance,' " [7] this court, in *Day*, set no specific
period of time as standard upon which to determine,
conclusively or presumptively, whether or not the right to
a speedy trial had been violated. In *Day*, this court
specifically stated: "We think that if a specific period
of time is to be adopted as a condition precedent to the
application of the balancing test, it should come from the
legislature." [8] The balancing of the factors involved,
length of delay included, was thus left to be considered
on an ad hoc or case-by-case basis.

*Federal court rule 46.* The majority opinion cites a
District of Columbia appeals court decision,[9] finding a
denial of speedy trial where a defendant was confined
for thirteen months prior to trial, even though the de-
fendant there ". . . was not prejudiced at his trial by
the pretrial delay . . . ." [10] But in that case there was
admitted noncompliance by the government with Rule
46 (g) of the Federal Rules of Criminal Procedure.[11]
As the federal appeals court pointed out, this rule ". . .
requires the United States Attorney to furnish the district
courts with bi-weekly reports of persons in custody for
more than ten days. The rule also requires him to give the
reason that the defendant is being held." [12] Along with

---

[6] *Id.* at pages 243, 244, citing *Hansen v. State* (1965), 26
Wis. 2d 238, 242, 131 N. W. 2d 837, quoting *Kopacka v. State*
(1964), 22 Wis. 2d 457, 461, 126 N. W. 2d 78.

[7] *Id.* at page 245, quoting *Barker v. Wingo, supra*, footnote 2,
at page 530.

[8] *Id.* at page 245.

[9] *United States v. West* (D. C. Cir. 1974), 504 Fed. 2d 253.

[10] *Id.* at page 256.

[11] *Id.* at page 255.

[12] *Id.* at page 257, referring to Rule 46 (g), Federal Rules of
Criminal Procedure, providing in pertinent part: "The attorney
for the government shall make a bi-weekly report to the court

this federal court rule, the District of Columbia federal courts have held that "a delay of more than one year between arrest and trial gives *prima facie* merit to a Sixth Amendment challenge." [13] With defendant West confined in jail for thirteen months between his arrest and trial, the prima facie merit or presumption of denial of speedy trial arose. If we had the same rule and implementation here, the result would be the same. However, there is no such rule of court or statute in Wisconsin and the situation present in *West* could not arise here. The statute in this state provides that, if the trial of a defendant charged with a felony does not commence within ninety days from the date trial is demanded, the defendant ". . . shall be discharged from custody or released from the obligations of his bond." [14] With adequate protection against oppressive pretrial incarceration thus assured, the writer sees no reason for abandoning its oft-repeated refusal to set ". . . a specific period of

listing each defendant . . . who has been held in custody pending indictment, arraignment or trial for a period in excess of ten days. . . . As to each defendant so listed the attorney for the government shall make a statement of the reasons why the defendant is still held in custody."

[13] *Id.* at page 255, the court stating: "In this circuit a delay of more than one year between arrest and trial gives *prima facie* merit to a Sixth Amendment challenge. . . . In cases tried after 1972, a delay of more than six months is 'subject to inquiry and need for justification.' . . . Because the delay in this case exceeded one year, the burden shifted to the government to justify the delay. If the government cannot justify the delay, the indictment must be dismissed. . . ." (p. 256) Of such time-fixing presumptive rule, the District of Columbia court stated: "In *Barker v. Wingo* . . . the court said that each case must be decided on its own facts and declined to establish a constitutional rule requiring all criminal defendants to be brought to trial within a specified time. Nevertheless, the court noted that '[n]othing we have said should be interpreted as disapproving a presumptive rule adopted by a court *in the exercise of its supervisory powers* which establishes a fixed time period within which cases must normally be brought.'" (p. 255) (Emphasis supplied.)

[14] *See:* Sec. 971.10 (2) (a) and (4), Stats.

time as a standard upon which to determine whether or not the right to a speedy trial had been violated. . . ." [15] particularly so because the United States Supreme Court in *Barker* specifically declined to do just that.[16]

*"The balancing test."*

*Factors involved.* Among the factors which a court should assess in determining if a defendant has been denied a speedy trial, the high court in *Barker* lists four: (1) Length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.[17] In *Barker,* the high tribunal makes clear: "We regard none of the four factors identified above as either a necessary or sufficient *condition to the finding of a deprivation of the right of speedy trial."* [18] As *Barker* puts it, "Rather, they are related factors and must be *considered together with such other circumstances as may be relevant.* . . ." [19] It is under the totality of relevant circumstances involved, that the court ". . . must still engage in a difficult and sensitive balancing process." [20] This does not mean that a defendant must establish "an affirmative demonstration of prejudice . . . to prove a denial of the constitutional right to a speedy trial." [21] Nor does it mean that if he does he

[15] *Day v. State, supra,* footnote 3, at page 245, and cases there cited.

[16] *Barker v. Wingo, supra,* footnote 2, at pages 529, 530, the court stating: "We, therefore, reject both of the inflexible approaches—the fixed-time period because it goes further than the Constitution requires; the demand-waiver rule because it is insensitive to a right which we have deemed fundamental. . . ."

[17] *Id.* at page 530.

[18] *Id.* at page 533. (Emphasis supplied.)

[19] *Id.* at page 533. (Emphasis supplied.)

[20] *Id.* at page 533.

[21] *See: Moore v. Arizona* (1973), 414 U. S. 25, 26, 94 Sup. Ct. 188, 38 L. Ed. 2d 183, holding: ". . . *Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial."

is by such demonstration entitled to a finding of denial of speedy trial. The right to a speedy trial is relative, not fixed and absolute, with the right of the public to justice, as well as the right to speedy proceedings, involved. As the United States Supreme Court said in *Barker:*

" 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' " [22]

*Four factors suggested.* In balancing the right of the public to the imposition of appropriate penalties on the provably guilty and the right of a defendant or the public to speediness of trials, the writer places, side by side, the fact situation, as to the four factors suggested in *Barker,* alongside the facts in the case before us.

1. *Length of delay.* In *Barker,* there was more than a four-year delay between the indictment of the defendant and the trial of the defendant which resulted in a conviction on the charge of murder.[23] In the case before us, there was an eighteen-month delay between the filing of the criminal complaint and the trial which resulted in the conviction of the defendant on the charge of armed robbery.

2. *Reasons for delay.* In *Barker,* the reasons for delay include a series of 16 continuances sought and secured by the prosecution, most of them requests for continuances to the next term of court.[24] (The circuit court in which the case was pending held three terms of court each year.) Most were secured by the state awaiting the outcome of the trial of codefendant Silas Manning.[25] Some continuances were sought and secured by the state

[22] *Barker v. Wingo, supra,* footnote 2, at page 522, quoting with approval from *Beavers v. Haubert* (1905), 198 U. S. 77, 87, 25 Sup. Ct. 573, 49 L. Ed. 950.

[23] *Id.* at pages 516–519.

[24] *Id.* at page 516.

[25] *Id.* at page 516.

due to the illness of an ex-sheriff who was the chief investigating officer in the case.[26] In the case before us, none of the adjournments were sought or attributable to the prosecution. One reason for delay was the request of defendant for an adjournment not only of this case, but of four other charges for masked, armed robbery and aiding and abetting robbery, for a time of trial six to eight weeks hence. Another reason clearly was the illness of the trial court judge, necessitating the appointment of substitute judges, the first of whom resigned after his appointment. The writer would find such illness of the presiding judge to be a "strong excuse," the term used to describe the illness of the ex-sheriff in the *Barker Case*.[27] Unlike *Barker*, none of the continuances involved in the case before us can be attributed to the prosecution or to action of the prosecutor.

3. *Assertion of right.* In *Barker*, the defendant first asserted his claim of right to speedy trial twenty months before the actual trial date.[28] In the case before us, the defendant moved for a speedy trial at the time of arraignment, eighteen months before the trial. In *Barker*, the high court rejected the demand-waiver requirement, holding that ". . . [t]he result in practice is likely to be either an automatic, *pro forma* demand made immediately after appointment of counsel or delays which, but for the demand-waiver rule, would not be tolerated. . . ."[29] Instead, it left defendant's assertion of or failure to assert the right to a speedy trial as ". . . one of the factors to be considered in an inquiry into the deprivation of the right. . . ."[30] Obviously it is no longer a factor to be given any heavy weight.

---

[26] *Id.* at pages 517, 518.

[27] *Id.* at page 534, the court stating: ". . . seven months of that period can be attributed to a strong excuse, the illness of the ex-sheriff who was in charge of the investigation. . . ."

[28] *Id.* at pages 518, 519.

[29] *Id.* at page 528.

[30] *Id.* at page 528.

4. *Prejudice to the defendant.* In *Barker,* the elements to be assessed as to prejudice to the defendant by delay are set forth: (1) Oppressive pretrial incarceration; (2) anxiety and concern; and (3) the possibility that the defense will be impaired.[31] In *Barker,* the court adds: "Of these, the most serious is the last . . . ."[32] Each of the three elements will be reviewed, and compared to the fact situation in *Barker,* separately.

(a) *"Oppressive pretrial incarceration."* In *Barker,* while the defendant was released on bond for most of the pretrial period of four years, he did spend ten months in jail before trial.[33] In the case before us, the defendant, soon after the expiration of the ninety-day period referred to in the statute,[34] was ordered released without the requirement of bond. For one month thereafter, he was held in custody on a holding order on a criminal matter pending against him in a neighboring state. One month after his release without bond on this charge, he was sentenced, upon conviction, to another of the five felony charges pending against him in this state. Confinement in a state penal institution on a different criminal conviction hardly qualifies as "pretrial incarceration" due to delay in trying the charge here involved. His situation would have been no different if this case had not been pending. He was incarcerated, to be sure, but not on this charge or because of this case.

(b) *"Anxiety and concern."* In *Barker,* the high court held that ". . . Of course, Barker was prejudiced to

---

[31] *Id.* at page 532, the court stating: ". . . Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. . . ."

[32] *Id.* at page 532.

[33] *Id.* at page 534.

[34] Sec. 971.10 (2) (a), Stats.

some extent by living for over four years under a cloud of suspicion and anxiety. . . ." [35] In the case before us, the cloud of anxiety and concern over the defendant for eighteen months was not only shorter-lived, but much smaller. With the robbery here a masked and armed one, the testimony of customers in the tavern-restaurant held up could hardly have been feared as sufficient for conviction. The case of the state rested largely on the testimony of an accomplice, one of four men involved, who was prepared and willing to testify that the defendant was a participant in the armed and masked stickup. The change that the passage of time here might mean or bring was a change of heart on the part of the willingness of the accomplice to testify as to the involvement of the defendant. Any concern as to the consequences of delay must have been diluted by the hope, eventually disappointed, that the key witness for the prosecution might become unable or unwilling to be a witness against the defendant.

(c) *"Defense impaired."* In *Barker,* the court referred to the death, disappearance or loss of memory of defense witnesses as possible impairments of defense.[36] However, in *Barker,* it found no claim that any defense witnesses died "or otherwise became unavailable owing to the delay," and "only two very minor lapses of memory— one on the part of a prosecution witness." [37] In the case before us, there is no basis for a finding of any impairment of the defense due to delay. The trial was a short

---

[35] *Id.* at page 534.

[36] *Id.* at page 532, the court stating: ". . . If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. . . ."

[37] *Id.* at page 534, the court stating: ". . . But there is no claim that any of Barker's witnesses died or otherwise became unavailable owing to the delay. The trial transcript indicates only two very minor lapses of memory—one on the part of a prosecution witness—which were in no way significant to the outcome."

one. Presentation of the case by the state, direct and cross-examinations included, took six hours. Only the defendant himself testified for the defense. Lapses of memory due to delay on the part of the prosecution witnesses could only weaken the case against the defendant. There is no claim that the defendant suffered any lapse of memory as to what he did or did not do on the day of the robbery. Appellate counsel for defendant does claim that defendant's incarceration in the state reformatory hampered communication between counsel and client. That situation resulted from his conviction on another charge, and earlier trial of this case could not have increased either the frequency or ease of lawyer-client contacts on the charge here involved. There is no basis in this record for finding any impairment of the defense due to delay.

5. *Wanting a speedy trial.* As an additional relevant circumstance, in *Barker,* the high court found that ". . . the record strongly suggests that while he [defendant] hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried. . . ."[38] In the case before us, the same "strong suggestion" is in the record. When defense counsel made his *pro forma* motion for a speedy trial, he coupled with it a motion for continuance of all five felony charges pending against him for a six to eight weeks' period of time. He stated on the record his reason for so doing: ". . . I feel that it would give the defense adequate time to prepare *and still be well within the three-month period required by statute for a speedy trial.*" (Emphasis supplied.) The reference is to the statute prescribing a ninety-day limit for trial of a felony charge, with release without requirement of bond the consequence of delay in trial beyond ninety days.[39]

---

[38] *Id.* at page 535.
[39] Sec. 971.10 (2) (a) and (4), Stats.

Defense counsel thus set the stage for the motion, subsequently made, for the dismissal of all five felony charges because they were not tried within ninety days of demand. That the statutory escape hatch counsel saw open was in fact closed does not alter the obvious trial strategy expressed in seeking both a continuance of five charges for two months, and insisting upon their trial within three months. When the trial judge became ill, substituted judges assigned this case found not a defendant wanting to go to trial, but rather a defendant moving for dismissal on ground of denial of speedy trial. There is a clear difference between seeking a speedy trial and seeking dismissal of charges because of denial of speedy trial.[40] Here the repeated motions for dismissal "involved time and delayed the trial." [41] Here the defendant, by his conduct, involved himself in five separate armed robbery prosecutions and, as a trial tactic, intertwined them for the purpose of joint preparation, but not joint trial, of all five. If the highway here was crowded and traffic delayed, it was defendant's conduct, trial tactic and repeated motions for dismissal that contributed to the slowdown—not any action by the state.[42]

[40] *McGrath v. State* (1969), 42 Wis. 2d 292, 298, 166 N. W. 2d 172, this court there finding the making by defendant of repeated pretrial motions, including two for dismissal due to denial of speedy trial, as one of four factors ". . . for which the defendant, not the prosecution, must be held in law responsible."

[41] *Id.* at page 297, this court stating: ". . . Quite aside from the substance or lack of substance of the issues raised, each of these pretrial motions involved time and delayed the trial. They need not be called delaying tactics to be identified as time-consuming impediments to early trial."

[42] *State v. Stoeckle* (1969), 41 Wis. 2d 378, 389, 164 N. W. 2d 303, this court stating: ". . . The record is clear that the defendant could long ago have received his trial and, if convicted and sentenced, could be serving that sentence. The fact that he is not is a matter of his own choosing—not a denial of speedy trial by the state."

*"Balancing the scales."*

*In conclusion.* In *Barker,* balancing the relevant factors to be assessed and considered, the United States Supreme Court found no denial of the right to a speedy trial where it was established that: (1) There was more than a four-year delay between indictment and trial; (2) the reasons for the delay included sixteen motions for continuance by the prosecution and the seven months' illness of the state's key witness; (3) the defendant asserted his right to a speedy trial twenty months before the delayed trial; and (4) there was no significant impairment of the defense and that ". . . prejudice [to the defendant] was minimal. . . ." [43] In the case before us, considering the same factors weighed in *Barker,* the writer would find no denial of right to speedy trial where it is established that: (1) There was an eighteen-month delay between arraignment and trial; (2) the reasons for the delay included a two months' continuance sought by defendant, the illness of the judge and repeated motions for dismissal by the defendant; (3) the defendant made a motion at time of arraignment for speedy trial, but subsequently sought, not trial, but dismissal for want of speedy trial; and (4) there was no impairment in any way of the defense at trial and prejudice to the defendant was nonexistent.

In *Barker,* the United States Supreme Court stated that ". . . more than four years was too long a period, particularly since a good part of that period was attributable to the Commonwealth's failure or inability to try Manning [the codefendant] . . . ." [44] Nonetheless, it concluded that: "Two counterbalancing factors, however, outweigh these deficiencies. The first is that prejudice was minimal. . . . [The second] is the fact that Barker did not want a speedy trial. . . . Instead the record

[43] *Barker v. Wingo, supra,* footnote 2, at page 534.
[44] *Id.* at page 534.

strongly suggests that while he hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried. . . ." [45] In the case before us, the writer would hold that eighteen months was too long a period between arraignment and trial, even though no part of that period is attributable to the prosecution. The writer would conclude that two counterbalancing factors outweigh the lapse of time occurring. The first is that any prejudice to the defendant is completely nonexistent. The second is that the record here, from defendant's first request for a two months' continuance on, strongly suggests that he hoped to take advantage of the delay he had originally procured, and thereby obtain a dismissal of the charge, rather than a trial on the charge. So the writer would affirm the conviction, finding here no denial of defendant's right to a speedy trial.

I am authorized to state that Mr. Justice LEO B. HANLEY and Mr. Justice CONNOR T. HANSEN join in this dissent.

---

[45] *Id.* at page 534 and page 535.